Brian D. Murphy, Esq. (*pro hac vice* forthcoming)
Maria A. Gomez, Esq. (N.J. Bar No. 356552021)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10012
Tel: (212) 653-8700
Fax: (212) 653-8701
bmurphy@sheppardmullin.com
magomez@sheppardmullin.com
*Attorneys for Howden US Services, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIS AMERICAS ADMINISTRATION, INC. and WILLIS TOWERS WATSON NORTHEAST, INC., | |
| Plaintiffs, | Hon. Georgette Castner |
| v. | No.: 3:25-CV-16217-GC-RLS |
| DANIELLE LOMBARDO and HOWDEN US SERVICES, LLC, | |
| Defendants. | |

**DEFENDANT HOWDEN US SERVICES, LLC'S BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
<u>ORDER AND PRELIMINARY INJUNCTION</u>**

## **TABLE OF CONTENTS**

                                                                        Page

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF RELEVANT FACTS ......................................................4

    I.    The Parties & The Insurance Brokerage Industry................................4

    II.   Lombardo's Work History & Client Relationships .............................6

    III.  Lombardo Becomes Disenchanted With WTW And Joins
          Howden .............................................................................................7

ARGUMENT ...............................................................................................9

    I.    Applicable Standards.........................................................................9

    II.   Plaintiffs Have Not And Cannot Demonstrate Irreparable Harm
          In The Absence Of Injunctive Relief ...............................................10

          A.    There Is No Irreparable Harm Because Plaintiffs' Claims
                Are Redressable By Monetary Damages .................................12

          B.    There Is No Irreparable Harm Because Lombardo's
                Clients Are Not Clients Subject To The Non-Solicitation
                Agreement .............................................................................17

    III.  Plaintiffs Have Not And Cannot Demonstrate A Likelihood Of
          Success On The Merits Of Their Claims Against Howden ...............18

          A.    Plaintiffs' Claim For Tortious Interference With
                Lombardo's Non-Solicitation Agreement Lacks Merit...........19

          B.    Plaintiffs' Claim For Tortious Interference With
                Unidentified Contracts Allegedly Entered Into With The
                Lombardo Employee Team Lacks Merit ..................................23

    IV.  The Balance Of The Equities Weighs Against Injunctive Relief .......25

    V.   Injunctive Relief Would Not Benefit The Public Interest...................26

    VI.  If An Injunction Is Issued, Plaintiffs Should Be Required To
          Post A Substantial Bond...................................................................27

CONCLUSION ..........................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*A.T. Hudson & Co., Inc. v. Donovan*
  216 N.J. Super. 426 (N.J. Super. Ct. App. Div. 1987) ........................................20

*Acierno v. New Castle Cty.*
  40 F.3d 645 (3d Cir. 1994) .................................................................................12

*ADP, LLC v. Lynch*
  No. 16-CV-1053, 2020 WL 1922590 (D.N.J. Apr. 21, 2020)............................21

*ADP, LLC v. Rafferty*
  923 F.3d 113 (3d Cir. 2019) ...............................................................................20

*Anderson v. Davila*
  125 F.3d 148 (3d Cir. 1997) ...............................................................................11

*In re Arthur Treacher's Franchisee Litigation*
  689 F.2d 1137 (3d Cir.1982) ...............................................................................13

*BDO Siedman v. Hirshberg*
  93 N.Y.2d 382 (1999)..........................................................................................21

*Blessed Day Care Ctr., Inc. v. FDIC*
  No. 20-CV-9910, 2025 WL 957406 (D.N.J. Mar. 31, 2025) ............................21

*Boynes v. Limetree Bay Ventures LLC*
  110 F.4th 604 (3d Cir. 2024) ..............................................................................16

*Chubb Ina Holdings Inc. v. Chang*
  No. 16-CV-2354-BRM-DEA, 2017 WL 499682 (D.N.J. Feb. 7, 2017)......14, 16

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*
  912 F. Supp. 747 (D.N.J. 1995).........................................................................19

*Cont'l Grp., Inc. v. Amoco Chemicals Corp.*
  614 F.2d 351 (3d Cir. 1980) ....................................................................11, 26, 27

*Cooper v. Sharp*
  No. 10-CV-5245-FSH, 2011 WL 1045234 (D.N.J. Mar. 23, 2011) .................10

*Drosos & Assocs., PC v. TD Bank NA*
    No. 23-CV-1275-SDW-LDW, 2023 WL 4145619 (D.N.J. June 23, 2023).......11

*ECRI v. McGraw-Hill, Inc.*
    809 F.2d 223 (3d Cir. 1987) ........................................................................11, 13

*Frank's GMC Truck Center, Inc. v. General Motors Corp.*
    847 F.2d 100 (3d Cir. 1988) ........................................................................12, 14

*GEODIS USA, LLC v. Bravi*
    No. 23-CV-4322 MAS-TAB, 2023 WL 7221372 (D.N.J. Nov. 2, 2023)..........15

*Holland v. Rosen*
    277 F. Supp. 3d 707 (D.N.J. 2017), *aff'd*, 895 F.3d 272 (3d Cir. 2018) ......10, 16

*Howmedica Osteonics v. Zimmer Inc.*
    461 F. App'x 192 (3d Cir. 2012) .........................................................................13

*Jimenez v. T.D. Bank, N.C.*
    No. 20-CV-7699, 2021 WL 4398754 (D.N.J. Sept. 27, 2021)...........................24

*Louis v. Bledsoe*
    438 F. App'x 129 (3d Cir. 2011) ........................................................................10

*LY Berditchev Corp. v. ESupplements, LLC*
    No. 24-CV-0625-WJM, 2024 WL 4182585 (D.N.J. Sept. 12, 2024) ...............22

*Maldonado v. Houstoun*
    157 F.3d 179 (3d Cir. 1998) ...............................................................................10

*Mazurek v. Armstrong*
    520 U.S. 968 (1997)..........................................................................................9, 10

*Moneyham v. Ebbert*
    723 F. App'x 89 (3d Cir. 2018) ..........................................................................11

*Mylan Inc. v. SmithKline Beecham Corp.*
    723 F.3d 413 (3d Cir. 2013) ...............................................................................22

*New Skies Satellites, B.V. v. Home2US Commc'ns, Inc.*
    9 F. Supp. 3d 459 (D.N.J. 2014) ........................................................................19

*PeopleStrategy, Inc. v. Lively Employer Svcs., Inc.*
  No. 20-CV-2640-BRM-DEA, 2020 WL 7869214 (D.N.J. Aug. 28, 2020) .......21

*Reilly v. City of Harrisburg*
  858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017) .........................10, 19

*Rogers v. Corbett*
  468 F.3d 188 (3d Cir. 2006) ..............................................................................25

*Sandhills Global, Inc. v. Garafola*
  No. 19-CV-17225-MAS-TJB, 2019 WL 4143015 (D.N.J. Aug. 30, 2019).......14

*Small & Medium Enter. Consortium, Inc. v. Nielsen*
  No. 18-CV-8672, 2019 WL 13295520 (D.N.J. Jan. 18, 2019) .........................14

*Solari Indus., Inc. v. Malady*
  55 N.J. 571 (N.J. 1970)................................................................................20, 23

*Stryker Corp. v. Hagag*
  No. 21-CV-12499-ES-CLW, 2022 WL 3107163 (D.N.J. Aug. 3, 2022)...........19

*Tilden Recreational Vehicles, Inc. v. Belair*
  786 F. App'x 335 (3d Cir. 2019) ......................................................................19

*Veterans Guardian VA Claim Consulting LLC v. Platkin*
  133 F. 4th 213 (3d Cir. 2025) ...........................................................................16

*Weinberger v. Romero-Barcelo*
  456 U.S. 305 (1982)...........................................................................................26

*Westchester Fire Ins. Co. v. Glob. Real Const., LLC*
  No. 09-CV-207-JLL, 2009 WL 137414 (D.N.J. Jan. 20, 2009)...........................9

Other Authorities

First Amendment..................................................................................................16

Fed. R. Civ. P. 12(b)(6).......................................................................................24

Defendant Howden US Services, LLC ("Howden"), by and through its attorneys, Sheppard Mullin Richter & Hampton LLP, respectfully submits this Memorandum of Law in Opposition to the Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion") filed by Plaintiffs Willis Americas Administration, Inc. and Willis Towers Watson Northeast, Inc. (together, "Plaintiffs" or "WTW").

## **PRELIMINARY STATEMENT**

Plaintiffs seek the "extraordinary remedy" of injunctive relief in a circumstance where there are no allegations of misappropriation of trade secrets, where there is no contention that a departing employee provided unique or specialized services, and where there is no argument that an investment in the training and development of the departing employee was made. Instead, Plaintiffs seek an injunction to stop a former employee from servicing clients that chose her to serve their insurance needs for years before her brief 17-months of employment with Plaintiffs, at her new employer. This predicate, together with the paucity of Plaintiffs' evidentiary presentation, undermines every element Plaintiffs must establish to secure injunctive relief.

Danielle Lombardo is a veteran of the insurance brokerage industry. The brokerage industry is one where brokerage firms produce no tangible products. Instead, brokerage firms are a "house" for brokers, who are the assets. Brokers

develop client relationships through their expertise in understanding client needs, preferences, and finances, through their knowledge of insurance vehicles available from third-party companies, and through their ability to satisfy clients. Lombardo was exceptional in this regard and, prior to her employment with Plaintiffs, developed a robust roster of clients who entrusted their insurance needs to her irrespective of the firm with which she worked.

Indeed, WTW hired her for this precise reason. WTW hired Lombardo in April 2024 for the express purpose of capturing the revenue that Lombardo generated from clients that she had incepted years before. WTW, in fact, coached Lombardo on how to navigate and circumvent non-solicitation restrictions imposed upon her by a former employer. Yet now, after Lombardo became disenchanted with WTW owing to broken employment promises and the shoe on the other foot, WTW seeks to enforce its own non-solicitation restrictions against her at Howden. This effort should be rejected for three reasons.

First, there is no irreparable harm. Monetary damages are readily available to compensate Plaintiffs for the harm they identify – the loss of revenue derived from Lombardo's clients. Plaintiffs implicitly, if not explicitly, agree insofar as they include their estimate of the precise amount they believe they will lose – $2,000,000 – if Lombardo is permitted to continue to service her clients at Howden. Even if Plaintiffs had not calculated their alleged damages, a wealth of case law holds that

-2-

monetary damages flowing from a loss of clients are readily determinable. This unavoidable fact prevents Plaintiffs from establishing irreparable harm and requires denial of Plaintiffs' Motion without further inquiry.

Second, Plaintiffs cannot succeed on the merits of their claims against Howden (or Lombardo). As it concerns Plaintiffs' claim for interference with Lombardo's client non-solicitation agreement, its express terms do not apply to client relationships Lombardo incepted prior to her employment with WTW. This fact, together with the well-settled principle that an employer has no "protectable interest" supporting enforcement of a restrictive covenant over client relationships developed by an employee in prior employment, precludes Plaintiffs from demonstrating the existence of an enforceable contract or a consequential breach, fatal to her claim.

As it concerns Plaintiffs' claim for interference with the alleged non-solicitation agreements entered into by Lombardo's colleagues who followed her to Howden, Howden and the Court are left to guess. Plaintiffs do not attach the alleged agreements to the Complaint, Plaintiffs do not allege their terms, and Plaintiffs do not allege any conduct by these employees (or Howden) that might constitute a breach of the unknown terms of the unidentified agreements. This pleading failure not only prevents Plaintiffs from meeting their burden to demonstrate a likelihood of success on their claim, but renders it ripe for dismissal for failure to state a claim.

-3-

And third, Plaintiffs cannot demonstrate that the balance of the harms favor them or that the public interest supports enforcement of a non-solicitation agreement under these circumstances.  The relative harms to the corporate Parties are minimal as both are financially secure entities.  However, Lombardo would be prevented from servicing the clients upon which her entire business and career have been based – clients she personally cultivated relationships with long before joining WTW – and the clients would be denied the opportunity to work with the broker who they have entrusted their financial well-being to for years.  All because Plaintiffs seek enforcement of an inapplicable and unenforceable restrictive covenant.

The circumstances recounted above and expanded upon below dispense with the need for a robust evidentiary presentation from Howden.  Plaintiffs' proffer of evidence and argument simply does not meet their burden to establish entitlement to injunctive relief as a legal matter.  Accordingly, Howden respectfully submits that Plaintiffs' Motion and request for injunctive relief should be denied.

## STATEMENT OF RELEVANT FACTS

### I.    THE PARTIES & THE INSURANCE BROKERAGE INDUSTRY

Howden is a global insurance brokerage firm that provides insurance solutions for clients by acting as an independent intermediary between clients and any number of insurance companies that offer the underlying policies.  (Declaration of Richard

M. Blades dated October 20, 2025 ("Blades Decl.") ¶2).  WTW is a competitor of Howden in the insurance brokerage industry.  (Compl. ¶1).

Howden, WTW, and other firms in this industry, generally do not provide the insurance products themselves, but instead assess client needs, find and compare policies from various carriers, and help secure the purchase of insurance for clients. (Blades Decl. ¶3).  Howden and WTW generate revenue from commissions allowed by underwriters as a function of the cost of the underlying policies procured for clients and/or by an agreed upon fee paid by clients.  (*Id.* ¶4).

Neither Howden nor WTW offer a "product" to clients.  (*Id.* ¶5).  Instead, insurance brokerage firms offer services through the brokers they employ.  (*Id.*). Brokers incept, develop, and manage the relationships with their clients, deriving commissions for their brokerage firms.  (*Id.* ¶6).  The brokers are the "assets" or the "product" of a brokerage firm.  (*Id.*).  They are the source of client relationships and, along with the team supporting their work, possess the knowledge of client needs, preferences, and risk tolerance to assess their clients' insurance requirements to secure appropriate insurance vehicles.  (*Id.*).  As an expected consequence, in the eyes of a client, the relationship with the individual broker is primary over the brokerage firm employing the broker.  (*Id.*).

Lombardo has worked as a broker in the insurance industry since 2011 and has worked for Lockton Companies ("Lockton"), WTW, and since September 25,

2025, Howden.   (Declaration of Danielle Lombardo dated October 20, 2025 ("Lombardo Decl.") ¶1, 3, 12).  During that time, she has ascended as a preeminent broker in the field of real estate. (*Id.* ¶3-4).

## II.   LOMBARDO'S WORK HISTORY & CLIENT RELATIONSHIPS

Lombardo was hired by WTW in or around April 2024 from Lockton.  (*Id.* ¶12, 26).  At the time of her hiring, and in the years preceding it, Lombardo had amassed an impressive and valuable roster of clients.  (*Id.* ¶6, 10-11).  These clients included, among others, Time Equities, Inc. and Fundamental Advisors, LP.  (*Id.* ¶6).

In fact, it was because of these clients, their loyalty to Lombardo, and their insistence on following her to whatever brokerage firm with which she chose to work, that WTW extended her an offer of employment in March 2024.  (*Id.* ¶8, 24, 27-28).  WTW did so notwithstanding its awareness of certain client non-solicitation covenants she owed to Lockton.  (*Id.* ¶24).  Lombardo accepted in April 2024.  (*Id.* ¶25).

WTW developed a "playbook" for Lombardo concerning her resignation from Lockton, strategizing on how to transition her clients to WTW.  (*Id.* ¶24).  In accordance with that "playbook," Lombardo resigned from Lockton on April 19, 2024 effective 5:00PM, and at WTW's direction, "started" with WTW at 5:01PM the same day.  (*Id.* ¶26).  Lombardo and WTW were successful in transitioning

clients to WTW, with Lockton and WTW ultimately entering into an "Asset Purchase Agreement and Confidential Settlement Agreement" in August 2024 resolving any disputes about Lombardo's contractual restrictions and the transition of her clients to WTW.  (*Id.* ¶29).

WTW required Lombardo to execute a number of agreements as part of her employment, including a Confidentiality and Non-Solicitation Agreement (the "Lombardo NSA").  (Compl. Ex B).  The Lombardo NSA provided, in relevant part:

> Employee acknowledges and agrees, that by reason of Employee's employment, Employee . . . *will come into contact with clients of [WTW]* and will develop and maintain relationships with such clients. Employee further acknowledges that such client relationships have been developed at great expense by [WTW].

(Compl. ¶27 (citing Ex. B at ¶5) (emphasis added)).  The Lombardo NSA prohibited Lombardo from soliciting any clients that fell within the above-quoted, limited definition for a period of twenty-four (24) months following the separation of her employment from WTW.  (*Id.*).  The Lombardo NSA did not, on its face, apply to clients Lombardo incepted prior to WTW.

## III.  LOMBARDO BECOMES DISENCHANTED WITH WTW AND JOINS HOWDEN

Within months of joining WTW, Lombardo became disenchanted with WTW owing to the departure of WTW's Head of Corporate Risk & Broking (who had heavily recruited Lombardo to WTW), WTW's sale of Verita CSG, Inc. (a unique, in-house managing underwriter that specialized in insurance), and a number of high-

-7-

profile layoffs, including of persons in Lombardo's division (without consulting her). (*Id.* ¶30, 33-35). Lombardo harbored concern for the fate of the approximately six members of her team (the "Lombardo Employee Team") as well as the interests of her clients, and concluded that she could no longer protect either at WTW. (*Id.* ¶36, 38).

These concerns prompted Lombardo to reach out to Howden about potential employment, and she and Howden negotiated the terms and conditions of an employment package as of mid-September 2025. (*Id.* ¶39). In the immediate days before she left WTW, Lombardo informed 2-3 persons on the Lombardo Employee Team that she was leaving WTW because of her concerns. (*Id.* ¶13-14). When asked where she intended to go, Lombardo answered honestly: Howden. Each employee indicated a desire to join her. (*Id.* ¶13). Lombardo informed them that they would have to contact Howden to explore opportunities. (*Id.*).

Lombardo resigned from WTW on September 26, 2025. (*Id.* ¶40). In her resignation email, she informed WTW that "the clarity of direction, infrastructure, and support necessary for the role I was hired into have not materialized" and she had encountered a lack of "consistency, trust, and support." (*Id.*).

Lombardo informed each client that she had brought to WTW that she would be joining Howden. (*Id.* ¶9). Each voluntarily executed a "Broker of Record" ("BOR") Notice indicating an intent to follow Lombardo and designating Howden

as their BOR.  In addition, approximately five of the Lombardo Employee Team affirmatively reached out to Howden and negotiated deals to join as well.  (*Id.* ¶13).

## ARGUMENT

Howden respectfully submits that the Court should deny WTW the "extraordinary remedy" of injunctive relief based upon WTW's inability to demonstrate, *inter alia*, irreparable harm or a likelihood of success on the merits of their claims.

### I.    APPLICABLE STANDARDS

A temporary restraining order or preliminary injunction is an "extraordinary remedy" that  "should be granted only in limited circumstances." *Westchester Fire Ins. Co. v. Glob. Real Const., LLC*, No. 09-CV-207-JLL, 2009 WL 137414, at *1-2 (D.N.J. Jan. 20, 2009) (denying "drastic" and "extreme" remedy of temporary restraining order) (internal quotations and citations omitted); *see also Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries burden of persuasion") (emphasis in original) (internal quotations and citation omitted).

The movant must demonstrate: (i) they are likely to succeed on the merits; (ii) denial of injunctive relief will result in irreparable harm; (iii) granting the injunction will not result in irreparable harm to the defendants; and (iv) granting the injunction

is in the public interest. *See Cooper v. Sharp*, No. 10-CV-5245-FSH, 2011 WL 1045234, at *18 (D.N.J. Mar. 23, 2011) (quoting *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998)). The Third Circuit emphasizes that movants must establish "the threshold for the first two most critical factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Only if such "gateway" factors are satisfied will courts consider the remaining two factors and determine whether all factors "balance in favor" of preliminary injunctive relief. *Id.*

The movant must establish that each of the four factors favor injunctive relief. *Cooper*, 2011 WL 1045234, at *18. Indeed, the movant must present "substantial proof" on each element, which New Jersey District Courts recognize as a burden that is significantly higher than that imposed upon a defendant seeking summary judgment. *Holland v. Rosen*, 277 F. Supp. 3d 707, 724 (D.N.J. 2017), *aff'd*, 895 F.3d 272 (3d Cir. 2018) (quoting *Mazurek,* 520 U.S. at 972).

## II. PLAINTIFFS HAVE NOT AND CANNOT DEMONSTRATE IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF

The Court should deny Plaintiffs' Motion because Plaintiffs have not and cannot establish the most critical factor supporting injunctive relief: that they will suffer irreparable harm. *See Louis v. Bledsoe,* 438 F. App'x 129, 131 (3d Cir. 2011); *Drosos & Assocs., PC v. TD Bank NA*, No. 23-CV-1275-SDW-LDW, 2023 WL 4145619, at *3 (D.N.J. June 23, 2023).

It is incumbent on Plaintiffs to demonstrate a threat of clear and imminent future harm, rather than past harm. *See Anderson v. Davila*, 125 F.3d 148, 163-64 (3d Cir. 1997); *see also Cont'l Grp., Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). Further, the purported harm must be "actual and imminent" rather than speculative. *See Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) ("Establishing a risk of irreparable harm is not enough."). Finally, the alleged harm must, in fact, be irreparable, and "not merely serious or substantial." *ECRI*, 809 F.2d at 226; *see also Cont'l Grp., Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) ("Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties.").

In the Complaint, Plaintiffs allege they will suffer irreparable harm in the form of "damage to [their] relationships, including the loss of some or all of [their] Restricted Clients and Restricted Prospects," (Compl. ¶66), "the loss of client goodwill," (*Id.* ¶67), and the "tarnishing of WTW's longstanding image of dependability, stability, and client service along with the loss of client confidence," (*Id.* ¶68). In their Motion, Plaintiffs briefly reiterate these points in just a single page notwithstanding its importance to the relief they request. (ECF No. 4-1 at p.

22-23 (citing Martuscelli Decl. ¶ 6)). This is insufficient for Plaintiffs to meet their

burden for two reasons.[1]

### A.  There Is No Irreparable Harm Because Plaintiffs' Claims Are Redressable By Monetary Damages

Irreparable harm cannot exist where there is a legal remedy in the form of

monetary damages available. *See Frank's GMC Truck Center, Inc. v. General*

*Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988); *Acierno v. New Castle Cty.*, 40 F.3d

645, 653 (3d Cir. 1994) ("The injury created by a failure to issue the requested

injunction must be of a peculiar nature, so that compensation in money cannot atone

for it.") (internal quotations and citation omitted).

Here, if Plaintiffs are successful on their claims, monetary damages are readily

available and provide an adequate remedy. Indeed, Howden need not even

demonstrate the availability of monetary damages: Plaintiffs have done it

themselves. Plaintiffs have estimated the lost revenues attributable to the decisions

of Time Equities, Inc. and Fundamental Advisors, LP, to follow Ms. Lombardo, their

long-standing broker, to Howden at $1,000,000 each. (Compl. ¶¶ 56, 62). Beyond

---

[1]    Plaintiffs do not contend that they suffered any irreparable harm from Lombardo's alleged solicitation of her team to join Howden or by virtue of Howden's entering into employment relationships with any of these former WTW employees. Plaintiffs also do not contend they suffered any irreparable harm by virtue of any allegations that Lombardo misappropriated confidential information or that she was a unique employee. Howden's argument is therefore limited to the harms identified by WTW in support of their Motion.

that, Plaintiffs acknowledge that they previously went through this precise exercise when they entered into a so-called "Asset Purchase Agreement" pursuant to which "substantial compensation was paid by WTW-NE to Lockton for Time Equities, Inc. and other clients." (Compl. ¶57). That monetary damages are readily calculable is not surprising: revenues in this industry are simply a commission or fee paid to a broker and/or her employer when a policy is secured or renewed on behalf of a client tethered to the premiums paid on the policy(ies). Plaintiffs' concession forecloses a demonstration of irreparable harm.[2] *See Ecri*, 809 F.2d at 226 ("We have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law.") (quoting *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir.1982)).

Even if Plaintiffs had not conceded the adequacy of monetary damages, it is well-settled that where an alleged breach of a customer non-solicitation covenant results in the loss of customers, the injury is redressable in money damages and injunctive relief is not appropriate. *See Howmedica Osteonics v. Zimmer Inc.*, 461 F. App'x 192, 197, n.7 (3d Cir. 2012) (striking portion of injunction based on allegations of customer conversion, noting that Howmedica "can seek damages for business that was 'moved' tortiously or in violation of non-compete agreements");

---

[2]    The monetary damages alleged by Plaintiffs are themselves insignificant in the context of WTW's multi-billion dollar business.

*Frank's GMC*, 847 F.2d at 102 (holding, where plaintiff alleged harm due to lost customers, "the harm flowing therefrom is compensable by money damages"); *Chubb Ina Holdings Inc. v. Chang*, No. 16-CV-2354-BRM-DEA, 2017 WL 499682, at *12 (D.N.J. Feb. 7, 2017) (irreparable injury not shown because "[t]o the extent any of the Defendants have, in fact, improperly solicited Chubb's customers, Chubb's damages will be measured by the loss of business improperly diverted from Chubb to [defendant's new employer]"). That is precisely what Plaintiffs allege here.

Plaintiffs also cannot rely on alleged harms arising from matters other than the migration of clients to Howden with their broker as a basis for irreparable harm. Plaintiffs allude to the alleged loss of client good will. (Compl. ¶67). However, generalized allegations of harm in this regard are necessarily speculative and insufficient as a matter of law to support irreparable harm. *See Sandhills Global, Inc. v. Garafola*, No. 19-CV-17225-MAS-TJB, 2019 WL 4143015, at *1 (D.N.J. Aug. 30, 2019) ("Although loss of goodwill and industry reputation could suffice to demonstrate irreparable harm . . . here, Plaintiffs' Motion and accompanying Complaint . . . fail to explain what goodwill or harm to industry reputation it would suffer in the absence of an injunction.") (internal citations omitted); *Small & Medium Enter. Consortium, Inc. v. Nielsen*, No. 18-CV-8672, 2019 WL 13295520, at *2 (D.N.J. Jan. 18, 2019) (citing cases for proposition that "merely pleading the likely

-14-

loss of market share and goodwill is insufficient to demonstrate irreparable harm.")
(internal citations omitted).  The allegation is also misleading as to the dynamics of
client relationships in this industry: clients are tethered to particular brokers, as
Plaintiffs acknowledge insofar as they admit that they recruited Lombardo to WTW
for the purpose of securing the very clients she independently curated and upon
which they now premise their solicitation claims.  (Compl. ¶57).  Stated differently,
WTW had no goodwill with Lombardo's clients because they were never WTW's
clients in the first place – there was no goodwill to lose.

Plaintiffs also cannot establish irreparable harm by reference to alleged
reputational harm to WTW.  (Compl. ¶68).  Putting aside the very public challenges
that WTW has faced in its business well before Lombardo's departure, vague and
conclusory allegations of reputational harm are also insufficient to demonstrate
irreparable harm.  *See, e.g., GEODIS USA, LLC v. Bravi*, No. 23-CV-4322 MAS-
TAB, 2023 WL 7221372, at *4 (D.N.J. Nov. 2, 2023) (finding generalized
allegations of reputational harm insufficient to constitute irreparable harm).  It is also
disingenuous for WTW to advance this argument insofar as it engaged in the very
alleged behaviors for which it now faults Howden when it recruited Lombardo, and
surely will not concede that its actions affected reputational harm on Lockton.
(Compl. ¶¶ 57, 66-72).

The cases cited by Plaintiffs do not support a different result as they deal with factual circumstances far afield from the migration of customers and do not even arise in the employment context. *See Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 609 (3d Cir. 2024) (irreparable harm found where residents of an island territory were forced to use and drink oil-contaminated water); *Holland v. Rosen* 277 F. Supp. 3d 707, 748 (D.N.J. 2017) (finding against irreparable harm in a constitutional infringement case because a state remedy existed); *Veterans Guardian VA Claim Consulting LLC v. Platkin,* 133 F. 4th 213, 218-19 (3d Cir. 2025) (upholding preliminary injunction because a First Amendment violation "presumptively inflicts irreparable harm").

The Court should reject Plaintiffs' request for injunctive relief based on their inability to demonstrate irreparable harm alone.[3] *See Chubb Ina Holdings Inc.*, No. 2017 WL 499682, at *12 ("[A]n alleged violation of a restrictive covenant does not automatically give rise to immediate irreparable harm to goodwill and reputation.") (internal quotations and citation omitted).

---

[3]    Plaintiffs otherwise do not allege that Lombardo misappropriated trade secrets, that she was a particularly unique employee or that she provided extraordinary services, that they made an investment in training Lombardo, or any other commonly recognized event or circumstance that might give rise to irreparable harm.  The generic harms recited by Plaintiffs are categorically insufficient to suffice, particularly given the context of the brokerage insurance industry.

**B.    There Is No Irreparable Harm Because Lombardo's Clients Are Not Clients Subject To The Non-Solicitation Agreement**

Plaintiffs are also foreclosed from demonstrating irreparable harm by virtue of the migration of Lombardo's clients from WTW to Howden because these clients are outside the scope of the contractual provision upon which Plaintiffs rely to advance their claims.  Specifically, Plaintiffs base their claim on the Lombardo NSA, which states in relevant part:

> Employee acknowledges and agrees, that by reason of Employee's employment, Employee . . . *will come into contact with* clients of [WTW] and will develop and maintain relationships with such clients. Employee further acknowledges that such client relationships have been developed at great expense by [WTW]. . . .

(Compl. ¶27 (citing Ex. B at ¶5) (emphasis added)).

The Lombardo NSA sets forth an express limitation on who Lombardo could not solicit post-employment: WTW clients that she came into contact with by virtue of her employment with WTW.  Critically, however, the clients identified in Plaintiffs' Complaint are clients that pre-date Lombardo's relationship with WTW, and thus, were not clients she was introduced to or who she "came into contact with" by virtue of her employment with WTW.  (Lombardo Decl. ¶6).  WTW conspicuously fails to allege that Lombardo solicited any clients to which she was introduced by virtue of her employment at WTW, the circumstance contemplated by this contractual restriction and the circumstance that could give rise to a breach.

-17-

Plaintiffs cannot claim irreparable harm flowing from alleged conduct that does not constitute a breach. Any purported harm flows from WTW's failure to enter into a contract with Lombardo that prohibited her from soliciting or rendering services to the very clients that she brought to WTW. Plaintiffs' request for injunctive relief should be denied for this reason as well.

### III.    PLAINTIFFS HAVE NOT AND CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS AGAINST HOWDEN[4]

Plaintiffs allege claims against Howden for: (i) aiding and abetting Lombardo's alleged breach of fiduciary duty; (ii) tortious interference with the Lombardo NSA; and (iii) tortious interference with the alleged non-solicitation agreements entered into by the Lombardo Employee Team.[5]   Plaintiffs' Motion addresses only Plaintiffs' tortious interference claims and thus makes no showing capable of supporting injunctive relief for their aiding and abetting a breach of fiduciary duty claim. (ECF No. 4-1 at p. 17-20).

Plaintiffs cannot demonstrate they are likely to succeed on the merits of these claims against Howden. "To establish a likelihood of success on the merits,

---

[4]    Howden submits that Plaintiffs' claims against Lombardo are also meritless, and incorporates by reference all arguments made by Lombardo concerning Plaintiffs' inability to demonstrate a likelihood of success on those claims.

[5]    Plaintiffs' tortious interference allegations are explicitly limited to Howden allegedly permitting or inducing Lombardo and the Lombardo Employee Team to "solicit, accept business from, provide services to and/or transact business with" Time Equities, Inc. and Fundamental Advisors, LP in violation of her NSA. (Compl. ¶¶98, 106).

Plaintiff[s] must show that it is significantly better than negligible, but not necessarily more likely than not, that [they] will win on the merits of [their] claims." *Stryker Corp. v. Hagag*, No. 21-CV-12499-ES-CLW, 2022 WL 3107163, at *13 (D.N.J. Aug. 3, 2022) (citing *Reilly v. City of Harrisburg*, 858 F.3d at 179); *Tilden Recreational Vehicles, Inc. v. Belair*, 786 F. App'x 335, 340 (3d Cir. 2019)).

### A.    Plaintiffs' Claim For Tortious Interference With Lombardo's Non-Solicitation Agreement Lacks Merit

Plaintiffs are unlikely to succeed on their claim for tortious interference with Lombardo's NSA.  To state a claim for tortious interference with contract, Plaintiffs must demonstrate: (i) the existence of an enforceable contract; (ii) intentional and malicious interference by the defendant with that contract; (iii) breach of the contract; and (iv) damages.  *See Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 771-72 (D.N.J. 1995); *see also New Skies Satellites, B.V. v. Home2US Commc'ns, Inc.*, 9 F. Supp. 3d 459, 472 (D.N.J. 2014) (noting similar standard for tortious interference with economic relations).  Plaintiffs' claim will fail because they cannot establish the existence of an enforceable predicate contract, or that there was a breach by Lombardo of that contract.

Two circumstances prevent Plaintiffs from demonstrating that the Lombardo NSA is enforceable with respect to any activities by Lombardo or Howden in transitioning clients from WTW to Howden or that there was a breach: (i) the absence of an enforceable contract; and (ii) the absence of a breach.  First, as set

forth in Point II.B, *supra*, Time Equities, Inc. and Fundamental Advisors, LP, are outside the scope of the Lombardo NSA.  The Lombardo NSA does not prohibit Lombardo from soliciting client relationships she brought to WTW, and Howden's alleged activities in aid of any effort to transition those same clients to Howden cannot interfere with a contract provision that does not apply.

Second, even if the language of the Lombardo NSA were disregarded, the provision is unenforceable against Lombardo, and by extension, Howden.  Under New Jersey law, a non-solicitation agreement will only be enforced to the extent that it is designed to protect legitimate interests of an employer, it does not impose an undue hardship on an employee, and it is not injurious to the public.  *See ADP, LLC v. Rafferty*, 923 F.3d 113, 120-21 (3d Cir. 2019) (citing *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 576 (N.J. 1970)).  While the protection of client relationships can be a legitimate interest, is must be rooted in protection of the "significant investment of time, effort and money" spent on "soliciting clients" and developing and maintaining those relationships.  *A.T. Hudson & Co., Inc. v. Donovan*, 216 N.J. Super. 426, 434 (N.J. Super. Ct. App. Div. 1987).

Here, WTW cannot establish any protectable interest supporting enforcement of the Lombardo NSA to prohibit Lombardo from soliciting, or Howden from aiding the solicitation of, any of the clients identified in the Complaint or Motion.  Again, there is no allegation that Lombardo misappropriated trade secret information or that

she was a unique employee that provided specialized services. Plaintiffs rely on the purported need to protect client relationships and goodwill alone. However, the evidence establishes that these were her relationships, which Lombardo developed prior to working at WTW and then brought to WTW. (Lombardo Decl. ¶6). An employer cannot claim a legitimate interest in securing client relationships that were incepted by the employee prior to their employment. *See BDO Siedman v. Hirshberg*, 93 N.Y.2d 382, 391-93 (1999). Indeed, New Jersey Courts regularly "blue-pencil" overbroad non-solicitation agreements to narrow them to apply only to "client[s] that the employee would have come to know in the course of its employment." *PeopleStrategy, Inc. v. Lively Employer Svcs., Inc.*, No. 20-CV-2640-BRM-DEA, 2020 WL 7869214, at * (D.N.J. Aug. 28, 2020); *ADP, LLC v. Lynch*, No. 16-CV-1053, 2020 WL 1922590, at *13 (D.N.J. Apr. 21, 2020) (blue-penciling overbroad non-solicit to include only those clients about whom former employee learned because of his employment at ADP).

Beyond the lack of an enforceable contract concerning the alleged activities of Lombardo and Howden at issue, Plaintiffs also cannot establish that Howden interfered with "malice." Malice "does not require ill will," but the conduct "must be transgressive of generally accepted standards of common morality or of law." *Blessed Day Care Ctr., Inc. v. FDIC*, No. 20-CV-9910, 2025 WL 957406, at *10 (D.N.J. Mar. 31, 2025) (granting summary judgment on tortious interference claim)

-21-

(internal quotations and citation omitted). There is no injury if the conduct does not transgress the "rules of the game" such that "a plaintiff's loss of business is merely the incident of healthy competition." *LY Berditchev Corp. v. ESupplements, LLC*, No. 24-CV-0625-WJM, 2024 WL 4182585, at *3 (D.N.J. Sept. 12, 2024) (granting motion to dismiss tortious interference with contract claim) (internal quotations and citation omitted). Further, there can be no malicious or intentional act unless there is knowledge of the "specific contractual right" allegedly interfered with. *See Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 422 (3d Cir. 2013).

Here, Plaintiffs simply assign an improper motive to Howden by a generalized reference to Howden's alleged hiring activities and growth in the United States and the simple fact that Lombardo's clients have transitioned their business to Howden. (ECF No. 4-1 at pp. 19-20). Apart from those allegations being vague and unsupported, there is nothing improper with Howden's activities on their face. If true, they are coextensive (if not less egregious) than WTW's approach with Lockton. Further, Plaintiffs' argument fails to account for the inapplicability of the Lombardo NSA to the clients that transitioned from WTW to Howden. Stated differently, Plaintiffs have not established that Howden had knowledge that the Lombardo NSA would apply to such clients, and Howden therefore cannot have interfered with WTW's alleged contractual right – maliciously or otherwise. *See Mylan*, 723 F.3d at 422.

-22-

For each of these reasons, Plaintiffs' tortious interference claims against Howden premised on the Lombardo NSA are unlikely to succeed requiring denial of the requested injunction.

**B.     Plaintiffs' Claim For Tortious Interference With Unidentified Contracts Allegedly Entered Into With The Lombardo Employee Team Lacks Merit**

Plaintiffs' tortious interference claims against Howden based upon the contracts of the Lombardo Employee Team are subject to the same elements of proof described in Point III.A, *supra*.  Plaintiffs' claims are also likely to face the same outcome, albeit for additional reasons.

First, Plaintiffs have not pled the terms of the alleged agreements or contractual restrictions of the Lombardo Employee Team, leaving Howden to guess as to what they include (assuming they exist).  To be sure, Plaintiffs allege only that:

> Like Lombardo, each of the Lombardo Employee Team had executed one or multiple versions of their own Confidentiality and Non-Solicitation Agreements (the "Lombardo Team Employees NSAs").

(Compl. ¶46); and

> Each of the Lombardo Team Employees have post-employment restrictive covenants similar to those of Lombardo.

(Compl. ¶64).  Plaintiffs failed to expand on these references in their Motion.  (ECF No. 4-1 at p.8).

This failure of pleading and evidentiary support prevents Plaintiffs from arguing or establishing that the alleged contracts are enforceable or that their alleged

-23-

terms were breached.  While unnecessary given this deficiency, it also prevents an analysis by Howden or the Court of whether these alleged agreements pass muster under the *Solari* standard for enforcement of restrictive covenants in New Jersey. This forecloses Plaintiffs from meeting their burden to demonstrate a likelihood of success on the merits of this claim and, in fact, renders the claim ripe for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  *See Jimenez v. T.D. Bank, N.C.*, No. 20-CV-7699, 2021 WL 4398754, at *4-7 (D.N.J. Sept. 27, 2021) (granting, in part, Rule 12(b)(6) motion for failure to plead essential elements of breach of contract claim).

Second – even assuming the alleged contracts of the Lombardo Employee Team were identical (and not just "similar," as Plaintiffs unhelpfully describe them) to the Lombardo NSA – Plaintiffs have offered no allegations of breach.  To be sure, the entirety of Plaintiffs' allegation against the Lombardo Employee Team is made "upon information and belief," and is limited to: "Defendants have directed the Lombardo Employee Team to [provide services to Time Equities, Inc. and Fundamental Advisors, LP]."  (Compl. ¶65).  While there is no evidence supporting this allegation, it is even more notable that there is not even a single allegation that Lombardo Employee Team "solicited" any clients with which WTW transacted business – that which would be a breach of the theoretical agreements that are not before the Court.  The claim is entirely hollow.

-24-

Howden cannot be forced to guess at Plaintiffs' claims, and Plaintiffs cannot expect to secure the "extraordinary remedy" of injunctive relief without adequately stating their claim or offering argument in support. In light of the foregoing, Plaintiffs cannot demonstrate a likelihood of success on their tortious interference claim against Howden.

## IV.  THE BALANCE OF THE EQUITIES WEIGHS AGAINST INJUNCTIVE RELIEF

The balance of the equities tips in favor of denying injunctive relief. Balancing the equities requires the Court to consider the "relative harm to the parties," and weighs against injunctive relief where it would "result in even greater harm to the nonmoving party." *Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006).

Here, if injunctive relief is denied, Plaintiffs would not be harmed. An injunction would not result in the return of Lombardo's clients to WTW. Plaintiffs would retain a claim for money damages against Defendants. WTW is a multi-billion dollar entity and even by Plaintiffs' own estimation, their damages are approximately $2,000,000.

Howden, however, would suffer and would suffer under circumstances where Plaintiffs cannot advance a valid claim against it. While Plaintiffs posit that the only imposition on Howden would be "to refrain from unlawfully interfering in contractual relations," (ECF No. 4-1 at p. 24), the relief Plaintiffs seek goes far beyond that and would require Howden to disrupt the service it provides to

Lombardo's clients and reallocate resources and personnel, perhaps without the same expertise and certainly without the same strength of relationships, to do so and ensure Lombardo's clients' interests are protected.  Lombardo's clients would suffer as well in being denied the opportunity to continue to work with the broker of their choice with whom they have enjoyed a lengthy relationship.

## V.     <u>INJUNCTIVE RELIEF WOULD NOT BENEFIT THE PUBLIC INTEREST</u>

Injunctive relief under the circumstances of this case would not benefit the public interest.  "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Plaintiffs' only argument is the harm would be limited to "the clients that have already tendered BORs moving to Howden may not be able to work with Lombardo." (ECF No. 4-1 at p. 24).  Although Plaintiffs give this point short shrift, it is significant: Time Equities, Inc. and Fundamental Advisors, LP, worked with Lombardo long before she worked at WTW.  The length of the relationship alone demonstrates a degree of trust and confidence in Lombardo to handle important financial matters.  Preventing these clients from working with their broker of choice is meaningful and detrimental to their interests.

Beyond that, Plaintiffs appear to suggest that there is a general public interest in the enforcement of contractual obligations.  However, as the Third Circuit explained in *Continental Group, Inc. v. Amoco Chemicals Corp.*:

> If the interest in the enforcement of contractual obligations were the equivalent of the public interest factor in deciding whether or not to grant a preliminary injunction, it would be no more than a makeweight for the court's consideration of the moving party's probability of eventual success on the merits.

614 F.2d 351, 358 (3d Cir. 1980).

For each of the foregoing reasons, inclusive of those set forth in Points II-V, Howden respectfully submits that Plaintiffs' request for injunctive relief should be denied in its entirety.

## VI.    IF AN INJUNCTION IS ISSUED, PLAINTIFFS SHOULD BE REQUIRED TO POST A SUBSTANTIAL BOND

Plaintiffs acknowledge that a security bond is mandatory if an injunction is issued, but request that it be set in a "modest amount" of $20,000.  (ECF No. 4-1 at 25-26).  Plaintiffs' proposal fails to take into account the extreme disruption that would befall Howden in reallocating resources in an attempt to service Lombardo's clients, paying Lombardo and the Lombardo Employee Team to effectively perform no work given that their business is tethered exclusively to Lombardo's clients, and running the risk of losing the Lombardo clients to a competitor because of an inability to provide service.  Lombardo, herself, may suffer the permanent loss of client relationships that she sourced and developed for years prior to her association

-27-

with WTW. These consequential costs, together with the attorneys' fees incurred by Defendants in defending this action, support a bond of at least $3,000,000.

## <u>CONCLUSION</u>

For the reasons set forth herein, Howden respectfully requests that Plaintiffs' Motion for a temporary restraining order and preliminary injunction be denied in its entirety.

Dated: New York, New York      Respectfully submitted,

      October 20, 2025      **SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**

By: /s/ Maria A. Gomez
    Maria A. Gomez (N.J. Bar No. 356552021)
    Brian D. Murphy (*pro vac vice* forthcoming)
    30 Rockefeller Plaza, 39th Floor
    New York, NY 10112
    Tel: (212) 653-8700
    Fax: (212) 653-8701
    bmurphy@sheppardmullin.com
    magomez@sheppardmullin.com
    *Attorneys for Howden US Services, LLC*